IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TERESSA JOHNSON, | ) | 8:06CV586 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

In this Social Security appeal, the plaintiff, Teressa Johnson, contends that an administrative law judge ("ALJ") erred by rejecting her treating rheumatologist's diagnosis of fibromyalgia and by failing to give proper consideration to Johnson's obesity, to her somatoform disorder, and to the combined effects of her impairments or to the effects of her medications. Because I find that the ALJ did not have cause to reject the fibromyalgia diagnosis, and also that he failed to consider Johnson's somatoform disorder, I will reverse the Commissioner's determination that Johnson is not disabled and will remand the case for further proceedings.

## *I. BACKGROUND*

Johnson first applied for disability insurance benefits on October 22, 2002, claiming that she became unable to work on July 10, 2002.[1] The application was denied on January 9, 2003, with the state agency finding that while Johnson had a history of, and was receiving ongoing medical treatment for, anxiety, depression,

---

[1] Johnson has a college degree in teaching and was 38 years old on the date of the alleged onset of disability. Her past relevant work included jobs as a telephone solicitor, quality control inspector, general merchandise salesperson, customer service representative, department manager, and project manager.

fibromyalgia, vision problems, and difficulty in concentrating, the records did not establish that Johnson's condition would remain severe enough for 12 months in a row to keep her from working.

Johnson reapplied for disability insurance benefits on April 29, 2004. This application was denied on September 10, 2004. The state agency found that Johnson had a history of fibromyalgia pain, sleep problems, depression, vision problems, swollen feet, somnolence, and bilateral pedal edema secondary to veinous insufficiency, but that she was capable of performing many jobs in the national economy. The application was denied for the same reason on reconsideration on December 1, 2004.

At Johnson's request, an administrative hearing was held on August 8, 2005. Testimony was provided by Johnson, who was represented by counsel, by a vocational expert ("VE") under contract with the Commissioner, and also by a VE retained by Johnson. The ALJ issued an adverse decision on May 12, 2006.

In his decision, the ALJ evaluated Johnson's claims according to the five-step sequential analysis prescribed by the social security regulations. See 20 C.F.R. § 404.1520. Among other things, he found that (1) Johnson has not engaged in any substantial gainful activity since the alleged disability onset date; (2) Johnson has severe impairments, including (a) somatoform disorder, not otherwise specified, (b) venous insufficiency, (c) major depression, (d) dysthymic disorder, (e) depression, not otherwise specified, (f) mild degenerative changes of the left temporomandibular joint, (g) carpal tunnel syndrome, and (h) obesity: (3) Johnson's impairments, alone or in combination, do not meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Listings"); (4) Johnson lacks the residual functional capacity ("RFC") to return to her past relevant work; and (5) considering Johnson's age, education, work experience, and RFC, she can perform unskilled, sedentary jobs that exist in significant numbers in the regional or national economy, such as certain cashier jobs.

Johnson filed a request for further review by the Appeals Council, which was denied on July 18, 2006. This action was timely filed on September 13, 2006.

## *II. DISCUSSION*

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole. *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001). "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.*, at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome. *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result. *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992). Issues of law are reviewed de novo. *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995); *Smith*, 982 F.2d at 311.

The RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *Id.*

The ALJ in this case found that fibromyalgia was not a medically determinable impairment for Johnson because it had only been "loosely diagnosed" by her treating rheumatologist, David W. Swift, M.D. The ALJ stated:

3

The record includes a diagnosis of fibromyalgia, and the claimant testified that, while her most serious impairments are narcolepsy and depression, she is also limited by symptoms of fibgromyalgia. However, the undersigned finds fibromyalgia not to be a medically determinable impairment, as contemplated by 20 CFR 404.1529(b).

Although the claimant has alleged she is disabled by fibromyalgia, a clinical basis for the diagnosis is not to be found in the medical evidence of record.  For example, one letter from Dr. Smith [sic], the claimant's treating rheumatologist, only refers to fibromyalgia and does not reference trigger points or other indicia of the condition.  (Exhibit 22F/18)  Fibromyalgia is a diagnosis of exclusion, and treatment is only palliative and rarely successful.  In large measure, the record shows essentially reference upon reference to a remote diagnosis of fibromyalgia, or another physician's diagnosis, or a diagnosis without any of the requisite findings.  There are any number of other medical conditions that could result in functional limits allegedly related to fibromyalgia; the difference is that the other diagnoses conditions are amenable to treatment.

The record contains no conspicuous evidence that the claimant has been found to have tender (painful) points on examination that are on both sides of the body.  Dr. Swift, a treating rheumatologist, reported that ". . . all of her trigger points were tender . . ."  (Exhibit 22F/16)  Dr. Swift has opined that the claimant is disabled by symptomatic fibromyalgia, visual disturbance, and very poor sleep.  However, Dr. Swift's diagrams of tender point locations are not particularly clear, although one such note states, "18/18," presumably referencing 18 out of 18 tender points.  (Exhibit 22F/4)  For a diagnosis of fibromyalgia, at least 11 out of 18 tender points must be demonstrated.  The claimant has reported pain "from head to toe" for several years, but these generalized, diffuse symptoms are insufficient after a brief physical examination that does not rule out other conditions.  Exhibit 22F/22 indicates Dr. Swift found 13 of 18 tender points, but the office note suggests he adopted the diagnosis from the referring physician and did not make an independent assessment of the claimant's symptoms, signs, and laboratory findings.

4

> For the purpose of determining disability, fibromyalgia is not an automatic allowance. An individual may experience mild or more severe pain, and it is important to determine the intensity, duration, and persistence of the pain. The distinction between "painful" and "tender" must be made. In sum, the record fails to present probative evidence that the claimant's symptom complex, which has been loosely diagnosed as fibromyalgia, is a medically determinable impairment.

(Tr. 17.)

The Eighth Circuit has recognized that fibromyalgia is a chronic condition which is difficult to diagnose and may be disabling. *Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (citing *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir.2005) (per curiam)). Fibromyalgia is verifiable only through patient self-report. *Chronister v. Baptist Health*, 442 F.3d 648, 656 (8th Cir. 2006). However, the Eighth Circuit has recently held that the eighteen point "trigger test" described in the ALJ's decision qualifies as a "clinical examination standardly accepted in the practice of medicine" and constitutes objective evidence of the disease. *Id.* (quoting *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809 (8th Cir.2006)). *See also Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003) ("Fibromyalgia, a chronic condition recognized by the American College of Rheumatology (ACR), is inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue. Diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests. According to the ACR's 1990 standards, fibromyalgia is diagnosed based on widespread pain with tenderness in at least eleven of eighteen sites known as trigger points.").

It is apparent from Dr. Swift's notes that he performed the 18-point "trigger test" on Johnson on several occasions, and each time found enough tender points to support the diagnosis of fibromyalgia. Dr. Swift noted that Johnson had 13 tender trigger points on May 8, 2002 (Tr. 449), 18 tender trigger points on December 9, 2002 (Tr. 442), 16 tender trigger points on June 18, 2003 (Tr. 441), 15 tender trigger points

on December 12, 2003 (Tr. 439), and 18 tender trigger points on July 22, 2004 (Tr. 431).[2] Dr. Swift's notes for Johnson's initial office visit on May 8, 2002, show that Johnson reported seeing Dr. Chatwell at the Arthritis Center in Lincoln about a year earlier, and being told that she had fibromyalgia (Tr. 447-448), but this notation hardly supports the ALJ's supposition that Dr. Swift "adopted the diagnosis from the referring physician and did not make an independent assessment of [Johnson's] symptoms[.]"[3]

On the record presented, which contains no conflicting medical opinions on this issue,[4] the ALJ was not at liberty to reject the clinical diagnosis of her treating rheumatologist. *See* 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). *See also* 20 C.F.R. §404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

The Commissioner argues that the ALJ's rejection of Dr. Swift's fibromyalgia diagnosis was harmless error because he still considered her fibromyalgia-related symptoms. However, the ALJ made an adverse finding that Johnson's "statements regarding concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. 19.) When making a credibility determination, of

---

[2] Dr. Swift also examined Johnson on April 2, 2004. His findings from that exam are unclear. (Tr. 436.)

[3] Actually, it appears that Johnson was referred to Dr. Swift by Jeanne Ross-Mulbach, P.A., of the Family Practice of Grand Island, who had suggested to Johnson on June 4, 2001, that she be examined for fibromyalgia. (Tr. 483.)

[4] Even the state agency consulting physicians who reviewed Johnson's medical records concluded that she "has a MDI of fibromyalgia." (Tr. 250, 281.)

6

course, an ALJ may consider "[t]he absence of an objective medical basis which supports the degree of severity of subjective complaints." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (quoting *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ clearly did so in this case, as he stated:

> The record does not include a great deal of opinion evidence. Dr. Swift opined the claimant is disabled, but he also has diagnosed fibromyalgia, which is not supported by the criteria of the American College of Rheumatology, as discussed above. The undersigned instead has given weight to the state agency's findings at Exhibit 4F, which reflect a thorough review of the medical evidence and are consistent with the medical record as a whole. Although the state agency found fibromyalgia to be a medically determinable impairment, which the undersigned does not, the state agency's residual functional capacity findings support the finding here that the claimant can do sedentary work.
>
> In sum, the undersigned has not given great weight to the claimant's allegation that her impairments prevent her from engaging in any and all types of full-time, competitive, gainful employment on a sustained basis.

(Tr. 24.)

In summary, there is not substantial evidence to support the ALJ's finding that Johnson's fibromyalgia is not a medically determinable impairment. Because this finding may well have contributed to the ALJ's determination that Johnson is not disabled, the case must be remanded for further proceedings. In this regard, the ALJ cannot merely rely on the RFC assessments previously rendered by the state agency physicians. In particular, the ALJ should ask Dr. Swift to evaluate Johnson's ability to function in the workplace given her fibromyalgia-related symptoms. As stated in *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000):

> The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of [claimant's] RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of

7

doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id.* In our opinion, the ALJ should have sought such an opinion from [claimant's] treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess [claimant's] mental and physical residual functional capacity. As this Court said in *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1975): "An administrative law judge may not draw upon his own inferences from medical reports. *See Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir.1974); *Willem v. Richardson*, 490 F.2d 1247, 1248-49 n. 3 (8th Cir.1974)."

On a related matter, it is noted that the ALJ made no mention of Johnson's somatoform disorder while discussing her credibility. This mental disorder manifests as "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." Listings, § 12.07. A somatoform disorder can itself be a disabling impairment, *see Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001), and it is "directly contrary to the spirit of *Polaski v. Heckler*" for an ALJ to focus on objective physical data to the exclusion of the claimant's subjective experiences. *See Easter v. Bowen*, 867 F.2d 1128, 1131 (8th Cir.1989).

On December 6, 2002, Johnson was examined by a psychologist, A. James Fix, Ph.D., who provided an Axis I diagnosis of more than one type of somatoform disorder. Dr. Fix re-examined Johnson on July 23, 2004, and again diagnosed a somatoform disorder. Another psychologist, Allen J. Smith, Ph.D., performed a neurospsychological evaluation on June 3, 2003, and concluded that Johnson has a somatoform disorder or a conversion disorder, or a combination of the two. Johnson was also examined on January 25, 2005, by a psychiatrist, George Paskewitz, M.D., who reported that Johnson has an undifferentiated somatoform disorder. The ALJ apparently accepted these opinions by finding that Johnson's severe impairments include "Somatoform disorder, not otherwise specified" (Tr. 16), but there is nothing

8

in the ALJ's decision to indicate that he gave any consideration to this finding when making an RFC assessment. To the contrary, the ALJ even used Dr. Smith's report to discount "the claimant's allegation of disabling double vision" by stating that a "review of records has shown 'no identifiable evidence or medical explanation for the diplopia (double vision) despite multiple assays, examinations and consultations.' (Exhibit 15F)." (Tr. 23.)

On remand, in addition to giving proper consideration to the fibromyalgia diagnosis, the ALJ must consider whether Johnson's complaints of pain and vision problems are supported, in whole or in part, by the somatoform disorder diagnosis. The ALJ, of course, will also be expected to "consider the combined effect of all of [Johnson's] impairments," including her obesity,[5] in deciding whether she is capable of working. *See* 42 U.S.C. § 423(d)(2)(B).

Accordingly,

IT IS ORDERED that judgment shall be entered by separate document generally providing that the final decision of the Commissioner is reversed and the cause remanded for further proceedings consistent with this opinion.

July 27, 2007.　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　s/ *Richard G. Kopf*
　　　　　　　　　　　　　　　　　　United States District Judge

---

[5] The ALJ's decision provides no explanation for his determination that "the claimant's obesity is consistent with a residual functional capacity for a range of sedentary work." (Tr. 21.) This is unsatisfactory. *See* S.S.R. 02-1p, 2000 WL 628049, *7 (S.S.A. Sept. 12, 2002) ("As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.").